UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 19-1382

LA UNIÓN DEL PUEBLO ENTERO, *et al.*

Plaintiff-Appellees

versus

WILBUR L. ROSS,

sued in his official capacity, as U.S. Secretary of Commerce, *et al.*

Defendant-Appellants.

**AMENDED PLAINTIFF-APPELLEES' MOTION TO EXPEDITE APPEAL**

1.  These consolidated appeals and cross-appeal concern Defendants' actions to place a citizenship question on the 2020 decennial Census form. Pursuant to Local Rule 12(c), Plaintiff-Appellees La Unión del Pueblo Entero ("LUPE"), *et al.*[1] move for expedited briefing and oral argument, based on the urgency of the issues and the importance of the decennial Census to the public

---

[1] Order, Apr. 12, 2019, ECF No. 3 (consolidating *LUPE v. Ross*, No. 19-1382, with *Kravitz v. U.S. Dep't of Commerce*, No. 19-1387); Order, Apr. 19, 2019, ECF No. 6 (consolidating cross appeal *LUPE v. Ross*, No. 19-1425, with consolidated appeals under No. 19-1382).

1

interest. The amendment in this motion, originally filed on May 15, 2019, is limited to a change in the proposed briefing schedule in paragraph 13 below.

2. Defendant-Appellants filed notices of appeal for each of the consolidated cases on April 8, 2019, and Plaintiff-Appellees filed a cross-appeal on April 16, 2019. This Court consolidated all three appeals under No. 19-1382 and designated Defendants as the appellants for the purposes of the consolidated appeals and to proceed first at briefing and oral argument. Order, Apr. 19, 2019, ECF No. 6.

3. The 2020 Census date is April 1, 2020, which makes resolution of the consolidated appeals particularly time-sensitive. Defendants have represented that they must finalize the decennial Census questionnaire for printing by the end of June 2019. *See* Petition for Writ of Certiorari at 13-14, *Dep't of Commerce v. New York ("New York")*, No. 18-966 (U.S. Jan. 25, 2019).

4. Defendant-Appellants recognize the urgency of these issues, and indeed sought and were granted immediate review from the Supreme Court in the related *New York* cases. *See* Petition for Expedited Merits Briefing at 4-5, *New York*, No. 18-966 (U.S. Jan. 25, 2019). The issue presented by this appeal, whether the district court erred when it found that Defendant-Appellants did not violate the Fifth Amendment to the U.S. Constitution, is not before the Supreme Court in *New York*. The Supreme Court has received briefing and heard oral argument in *New*

*York* only on the claims that the addition of the citizenship question to the decennial Census violates the Administrative Procedure Act and the Enumeration Clause of the U.S. Constitution. Should the Supreme Court uphold the injunctive relief granted by the district court in *New York* on either of those grounds, there will be no need to expedite this appeal. However, should the Supreme Court reverse the *New York* district court's grant of injunctive relief, expedition of the current appeal is necessary to ensure that Plaintiff-Appellees' Fifth Amendment claim, which forms a separate basis for the entry of injunctive relief, is resolved in time to ensure resolution of Plaintiff-Appellees' cross-appeal before Defendant-Appellants finalize 2020 Census operations.

## ARGUMENT

### I. Standard of Review

5. Plaintiff-Appellees contend that the factual findings of the district court compel a conclusion that the addition of the citizenship question to the decennial Census violates the Fifth Amendment's prohibition against intentional discrimination in governmental decision-making. *See Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252 (1977); *N.C. State Conference of NAACP v. McCrory ("NAACP")*, 831 F.3d 204 (4th Cir. 2016). An appellate court may reverse a district court's ultimate finding regarding discriminatory motive if it is clearly erroneous. *NAACP*, 831 F.3d at 219-20 (reversing the district court's

failure to find discriminatory intent motivated the state legislature's passage of restrictive voting laws); *Hunter v. Underwood*, 471 U.S. 222, 229-30 (1985) (affirming appellate court's reversal of lower court's finding that state constitutional provision was not enacted on basis of racial animus); *Dayton Bd. of Ed. v. Brinkman*, 443 U.S. 526, 534, 537-40 (1979) (affirming court of appeals' conclusion that district court's failure to find the intentional operation of a dual school system was clearly erroneous). This factual finding is "clearly erroneous if a review of the entire record leaves the appellate court with the definite and firm conviction that the [d]istrict [c]ourt's key findings are mistaken." *NAACP*, 831 F.3d at 220 (*quoting Easley v. Cromartie*, 532 U.S. 234, 243 (2001) (internal quotations omitted)). This is particularly true when "the key evidence consisted primarily of documents and expert testimony and [c]redibility evaluations played a minor role." *Id.* However, if a trial court "bases its findings upon a mistaken impression of applicable legal principles, the reviewing court is not bound by the clearly erroneous standard." *Inwood Labs., Inc. v. Ives Labs.*, Inc., 456 U.S. 844, 855 n.15 (1982); *see also Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996) (courts review mixed questions of law and fact "under a hybrid standard, applying to the factual portion of each inquiry the same standard applied to questions of pure fact and examining de novo the legal conclusions derived from those facts").

6. Furthermore, if "the record permits only one resolution of the factual issue of discriminatory purpose, then an appellate court need not remand the case to the district court." *NAACP*, 831 F.3d at 220 (citing *Pullman–Standard v. Swint*, 456 U.S. 273, 292 (1982)); *Cromartie*, 532 U.S. at 257; *Hunter*, 471 U.S. at 229; *Dayton Bd. of Educ.*, 443 U.S. at 534, 542) (internal citations omitted).

## II. District Court's Findings of Fact and Conclusions of Law Compel a Conclusion that Defendants Violated the Fifth Amendment

7. The district court held a six-day bench trial between January 22 and January 31, 2019. On April 5, 2019, the district court issued an injunction prohibiting the inclusion of the citizenship question on the 2020 Census form. The district court found – based on detailed evidence in the administrative record and trial record – that Secretary Ross's justification for the addition of the citizenship question was pretextual and that the agency action was contradictory to the "unanimous opinion" of the Census Bureau. Findings of Fact and Conclusions of Law, *LUPE*, No. GJH-18-1570, (D. Md. Apr. 5, 2019) ECF No. 125 at 8. The district court concluded that Defendants' inclusion of the citizenship question to the decennial Census violated the Administrative Procedure Act and the Enumeration Clause of the U.S. Constitution. *Id.* at 4, 96-113. The district court denied Plaintiff-Appellees' Fifth Amendment equal protection claim. *Id.* at 113-117.

8. Governmental actions that are not racially discriminatory on their face can nonetheless violate constitutionally guaranteed protections. *NAACP*, 831 F.3d at 220 (citing *Vill. of Arlington Heights*, 429 U.S. at 264-66; *Washington v. Davis*, 426 U.S. 229, 241 (1976)). In *Arlington Heights,* the Supreme Court provided a framework for examining the totality of the circumstances surrounding a governmental decision in order to determine whether racial discrimination motivated the action. *See* 429 U.S. at 265-68. Under that framework, it is sufficient to prove that racial discrimination was "a motivating factor," and not the sole motivation for the decision to add the citizenship question to the Census. *Id.* at 265-66.

9. The Supreme Court in *Arlington Heights* identified a non-exhaustive list of factors that may constitute part of the "mosaic" of evidence that can give rise to an inference of discrimination: (1) disparate impact, *i.e.*, whether the action "bears more heavily on one race than another;" (2) the "historical background of the decision . . . particularly if it reveals a series of official actions taken for invidious purposes;" (3) "[d]epartures from the normal procedural sequence" and "[s]ubstantive departures[,]" "particularly if the factors usually considered important . . . favor a decision contrary to the one reached[;]" and (4) "contemporary statements" by those deciding the issue. *Id.* at 266-68 (internal quotations and citations omitted).

10. The district court found facts establishing each of the *Arlington Heights* factors. The district court detailed "overwhelming" quantitative and qualitative evidence in support of its finding that the citizenship question would result in a differential undercount of Hispanics and noncitizens, found remedial efforts will be less effective for those groups "at every step" in the Census Bureau's follow-up mitigation procedures, that the undercount will "cause vote dilution due to intrastate congressional and state legislative redistricting," and will injure plaintiffs through loss of Congressional seats in certain jurisdictions and disparate loss of federal funding. *See* ECF No. 125 43-78. The district court also found that the historical background of the decision was not what Secretary Ross presented in his justification memo, that Secretary Ross acted to cover up the true purpose of the addition of the question, and that Secretary Ross and other Commerce officials had numerous discussions with others outside the agency – including Presidential advisor and former Kansas Secretary of State Kris Kobach and former Attorney General Jeff Sessions – that confirm that the driving motivation for the citizenship question was not the Department of Justice request. *See id.* at 8-42, 109. The district court also made factual findings detailing the substantive departures from the Census Bureau's standards and guidelines in order to add the untested citizenship question, and that the Secretary moved forward against the unanimous counsel of the Census Bureau, in violation of statutory

authority, and with misleading attempts to "downplay deviation from Census Bureau standard procedures and gin up support for the Secretary's proposal." *See id.* at 8-42, 104-11. Finally, the district court made factual findings detailing the engagement of Secretary Ross and Department of Commerce officials with others inside and outside the Trump Administration and that these actors were not motivated by a desire to better enforce the Voting Rights Act of 1965, but rather were concerned with the inclusion of non-citizens in the total population count for the purposes of congressional apportionment, and these individuals harbored discriminatory animus, and may have been motivated by that animus. *See id.* at 8-17, 116. The record is replete with compelling evidence that racial discrimination was a substantial and motivating factor in the decision to add the citizenship question.

11. *Arlington Heights* counsels that once racial discrimination is shown to be a motivating factor, Defendants must demonstrate that the question would have been added without the impermissible factor. *NAACP*, 831 F.3d at 220 (citing *Vill. of Arlington Heights*, 429 U.S. at 265-66). The district court found that there was no other non-pretextual rationale at all, let alone a non-discriminatory one. ECF No. 125 at 116.

12. The district court erroneously concluded that Plaintiffs failed to prove discriminatory intent because they did not sufficiently tie views of racial animus to

8

Secretary Ross's actions. The district court stated, "In the absence of any other non-pretextual rationale, discrimination animus may well be the most likely explanation for Secretary Ross's addition of the citizenship question but that is not the same as saying it has been proven by a preponderance of the evidence." *Id*. That conclusion erroneously requires direct evidence of racial animus and evidences the district court's failure to engage in the "totality of the circumstances analysis required by *Arlington Heights*." *NAACP*, 831 F.3d at 233.

## RELIEF REQUESTED

13. Plaintiff-Appellees respectfully request that the parties file a joint appendix on or before June 3, 2019; that Defendant-Appellants be directed to file their opening brief on or before June 3, 2019; that Plaintiff-Appellees' response and opening brief be due on June 17, 2019; that Defendant-Appellants' reply and response brief be due on July 1, 2019; that Plaintiff-Appellees' reply brief, if necessary, be due July 8, 2019; and that oral argument be heard before July 31, 2019.

14. Plaintiff-Appellees have consulted with attorneys for Defendant-Appellants, who do not agree with the request to expedite the appeal. *Kravitz* Plaintiff-Appellees do not oppose the motion or the proposed schedule.

Dated: May 18, 2019

**By** /s/ Andrea Senteno

9

**MEXICAN AMERICAN LEGAL DEFENSE**
**AND EDUCATIONAL FUND**
Thomas A. Saenz (CA Bar No. 159430 )**
Nina Perales (TX Bar No. 24005046)
Denise Hulett (CA Bar No. 121553)*
Andrea Senteno (NY Bar No. 5285341)*
Tanya G. Pellegrini (CA Bar No. 285186)
Burth G. Lopez (Bar No. 20461)*
Julia Gomez (CA Bar No. 316270)
1016 16th Street NW, Suite 100
Washington, DC 20036
Phone: (202) 293-2828
Facsimile: (202) 293-2849

**ASIAN AMERICANS ADVANCING**
**JUSTICE | AAJC**
John C. Yang* (IL Bar No. 6210478)
Niyati Shah*º (NJ Bar No. 026622005)
Terry Ao Minnis (MD Bar No. 0212170024)
1620 L Street, NW, Suite 1050
Washington, DC 20036
Phone: (202) 815-1098
Facsimile: (202) 296-2318
*º Admitted in New Jersey and New York only. DC practice limited to federal courts.*

*\*Admitted to the Fourth Circuit Court of Appeals*
*\*\* Admission application pending*